UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| VIVIAN V. JACKSON, | ) | Case No. 1:06 CV 2971 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | MEMORANDUM OPINION |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | Magistrate Judge James S. Gallas |
| | ) | |

Vivian Jackson applied for but was denied disability insurance benefits under Title II of the Social Security Act. Following an administrative hearing before an ALJ and a "final decision" resulting from denial of her request for review by the Appeals Council (see 20 C.F.R. §404.981) she filed her complaint for judicial review of the administrative denial of benefits under 42 U.S.C. §405(g). The administrative decision at issue is dated February 21, 2006 and is the final decision of the Commissioner. The parties consented to the jurisdiction of the Magistrate Judge for all further proceedings including entry of judgment in accordance with 28 U.S.C. §636(c) and Rule 73 of the Federal Rules of Civil Procedure.

The ALJ found that Jackson's lower back pain and right leg pain caused by disc herniation was not disabling but limited her to a partial range of light work and allowing for the use of a cane for walking. She could perform her past relevant work as a manager and secretary, which were mainly sedentary (TR. 25).

1:06 CV 2971                                                                2

Jackson contends that the ALJ erred in failing to grant substantial weight to the opinion of her treating physician, Dr. Jimerson, who believed that she was disabled.

The issues before this court must be resolved under the standard whether there is substantial evidence in the record to support the Commissioner's decision. Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantiality is based upon the record taken as a whole. *Barney v. Secretary of Health and Human Services*, 743 F.2d 448 (6th Cir. 1984); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984). Substantial evidence is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Casey v. Secretary of Health & Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Smith v. Secretary*, 893 F.2d 106, 108 (6th Cir. 1989); *Richardson*, 402 U.S. at 401.

> In determining whether the Secretary's factual findings are supported by substantial evidence, we must examine the evidence in the record `taken as a whole.' *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980), and "must take into account whatever in the record fairly detracts from its weight." *Beavers v. Secretary of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464-65, 95 L.Ed. 456 (1951)). If it is supported by substantial evidence, the Secretary's determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam).

*Wyatt v. Secretary*, 974 F.2d 680, 683 (6th Cir. 1992); *Born v. Secretary*, 923 F.2d 1168, 1173 (6th Cir. 1990); and see *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (court may "not inquire whether the record could support a decision the other way").

1:06 CV 2971                                            3

Dr. Jimerson reported that Jackson is a 55-year old obese female who suffers herniated lumbar disc (TR. 94).  She was treated with analgesics and physical therapy and surgery had been recommended for her.  *Id.*  Objective evidence consisted of an MRI study indicating the small central to right disc herniation at L5-S1 with compression of the right S1 nerve root (TR. 95, 102). EMG and nerve conduction studies confirmed mild lumbar radiculopathy at the L4 on the left and L5 on the right (TR. 95, 98).  Physical examination revealed severe spasm and marked limitation of forward flexion, hyperextension and right and lateral bends.   Straight leg raising test was positive.  *Id.*  Dr. Jimerson believed Jackson was disabled and her condition would not improve. *Id.*  Dr. Jimerson prescribed Neurotin, Percocet, Ibuprofen, Flexeril, Valium and Lamasil (TR. 104). Also as part of his physical examination he noted that Jackson had difficulty standing from a chair to get to the exam table, could not stand erect, and that Jackson was in tears (TR. 95).

Dr. Jimerson also reported that in June 2005 Jackson complained of abdominal pain that could be caused by the Ibuprofen she was taking (TR. 95).  Gastroendoscopy examination revealed gastritis, and erosion of the stomach antrum and duodenum (TR. 95, 99-101).  Ibuprofen was discontinued (TR. 95).

Going back to the recommended surgery, the Commissioner points out that in July 2004 Jackson sought orthopedic surgeon Dr. Rohl for her complaints of leg and back pain (TR. 86-87). Jackson then had stated that she and her husband were against surgery or epidural injections.  Dr. Rohl recommended followup on an as needed basis and reported that he could not make any guarantee about surgical treatment (TR. 87).  Dr. Jimerson also remarked that Jackson had told him

1:06 CV 2971                                                                                  4

that she declined surgery because a doctor could not guarantee that it would improve her condition (TR. 94). However Jackson reconsidered epidural injection and received an injection in August 2005 which reportedly provided relief of her symptoms (TR. 95).

*Rejection of Opinion of Treating Physician:*

Dr. Jimerson opined that Jackson was disabled and in September 2005 presented a physical capacity assessment (TR. 95-96). He limited Jackson to lifting and carrying no more than five pounds, standing and walking a total of 30 minutes during the work day at intervals of 15 to 20 minutes, and sitting only one hour during the work day (TR. 96, 134). Dr. Jimerson also believed that Jackson could only occasionally climb ramps and stairs but could not stoop, crouch, kneel or crawl and that she indicated occasionally in all the physical function activities which extended to seeing, hearing and speaking (TR. 134), a point which the ALJ emphasized (TR. 22-23). Dr. Jimerson also reported no limitation to working around heights but limitations with respect to working around moving machines, extremes in temperature and requiring a dust, noise and fume free environment (TR. 134).

The ALJ noted Dr. Jimerson's opinions of disability and rejected them stating, "His conclusion that Miss Jackson is completely disabled is baffling, and there is no evidence in the medical file of a condition that precludes Miss Jackson from working. Indeed his own treatment of her back condition has been routine and conservative in nature, and he admits that she had obtained relief of her symptoms through treatment. Consequently, it is illogical for him to conclude she is completely disabled and unable to work — determinations strictly with the purview of this

1:06 CV 2971                                              5

Administration" (TR. 23). The ALJ in his decision deferred to the opinion from Dr. Goren, the medical advisor, that objectively Jackson would be capable of performing work at a light level of exertion (TR. 23, 169). The ALJ also rejected Dr. Jimerson's opinion because he had mismarked seeing hearing, and speaking, on the residual functional capacity form under "PHYSICAL FUNCTIONS" as being limited to occasional performance. (TR. 22-23, 134). This was an apparent error in filling out the administrative form and did not provide substantial evidence to reject Dr. Jimerson's opinion of disability.

As *Wilson v. Commissioner* instructs, the ALJ must give the opinion from the treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Id.*, 378 F.3d 541, 544 (6th Cir. 2004) quoting 20 C.F.R. §404.1527(d)(2) and §416.927(d)(2). On this last point, supportability of the medical opinion of disability has long been a key factor in determining how much weight to give the opinion. The ALJ is not bound by a conclusory opinion which is unsupported by detailed objective criteria, or when there is substantial medical evidence to the contrary. *Cutlip v. Secretary*, 25 F.3d 284, 286 (6th Cir. 1994); *Cohen v. Secretary*, 964 F.2d 524, 528 (6th Cir. 1992); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984). This has been incorporated into the regulatory scheme under §404.1527(d)(2) and its SSI counterpart §416.927(d)(2), which require that the treating physician's opinion must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques." This includes reporting : (1) treatment provided; (2) extent of examination; and (3) testing (20 C.F.R. §404.1527(d)(2)(ii) and §416.927(d)(2)(ii)). The ALJ *must* apply the regulatory factors of this section when explaining why

1:06 CV 2971                                          6

the treating source was not accorded controlling weight. *Bowen v. Commissioner of Soc. Sec.*, 478 F.3d 742, 747 (6th Cir. 2007), citing *Wilson*, 378 F.3d at 544. The ALJ also must consider the medical opinions "together with the rest of the relevant evidence." See 20 C.F.R. §416.927(b).

Dr. Jimerson found Jackson so severely limited as to be disabled whereas, the medical advisor, Dr. Goren, found that the medical record supported functional restriction to light work. Both physicians reach different conclusions on the same medical record. Under 404.1527(d) and its SSI counterpart §416.927(d), the ALJ is to consider the examining relationship, treatment relationship, supportability, consistency, specialization and other factors such as the medical sources familiarity with administrative requirements.

Jackson's arguments rest on supportability and consistency (See 20 C.F.R. §404.1527(d)(3) and (4). Supportability is fairly obvious to determine it is based on the laboratory findings and medical signs. As the regulation explains, the opinion from nonexamining sources will depend on "the degree in which they provide supporting explanations for their opinions." Consistency is simply consistency "with the record as a whole."

In this matter the non-examining sources did not provide any new medical data. The ALJ relied on Dr. Goren's testimony but Dr. Goren's testimony does not show supportability or consistency with the record. First of all, Dr. Goren noted that the MRI study would support the presence of pain, "but would say nothing about severity of pain" (TR. 169). Second and most notably, Dr. Goren rejected objective evidence from the EMG study as inconsistent with the MRI.

1:06 CV 2971                                            7

According to Dr. Goren the EMG showed abnormality which was not seen on the MRI (TR. 169). Dr. Goren concluded in his view the EMG was "wrong." So if lower extremity studies were incorrect, then this leaves solely the MRI which says "nothing about the severity of pain" (TR. 169). The ALJ did not resolve the dispute over the validity of the EMG study. The ALJ only acknowledged the MRI study (TR. 22).

This analysis is made complex because at the heart of the dispute is Jackson's credibility behind her claim of disabling back pain. It becomes especially critical to focus on the objective *and subjective* evidence of pain.

> An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

SSR 96-7p, 1996 WL 374186 (S.S.A.) at *1.

The ALJ aknowledged Social Security Regulation (SSR) 96-7p and concluded that following this guideline leads to the conclusion that Jackson's disabling symptoms and limitations cannot be accepted (TR. 23).

The format set forth in SSR 96-7p outlines the two-prong traditional form of administrative pain analysis requiring a determination of an underlying medically determinable physical or mental impairment followed by the question whether the impairment would be reasonably expected to produce the individual's pain or other symptoms. 1996 WL 374186 at *2.

1:06 CV 2971                                             8

Credibility determinations track pain analysis.  See *Felisky v. Bowen*, 36 F.3d 1027, 1038-39 (6th Cir. 1997); *McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995), *cert. denied*, 518 U.S. 1022 (1996); *Walters v. Comm. of Soc. Sec.*, 127 F.3d 525, 531-32 (6th Cir. 1997); and see *Saddler v. Commissioner of Soc. Sec.*, 173 F.3d 429, 1999 WL 137621 (Table 6th Cir. March 4, 1999); 20 C.F.R. §404.1529(c)(3); §416.929(c)(3).  SSR 96-7p sets out a basic rule for pain analysis which prohibits unexplained decisions concerning credibility which are based on a "single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible' . . .  The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewer the weight the adjudicator gave to the individual's statements and the reasons for that weight."  SSR 96-7p, 1996 WL 374186 *1-2; *Saddler* at *2.

Administrative evaluation requires the traditional two-prong *Duncan* test for pain evaluation plus the additional regulatory considerations under 20 C.F.R. §404.1529(c)(3) and §416.929(c)(3). See *Duncan v. Sec'y of Health & Human Services*, 801 F.2d 847, 853 (6th Cir. 1986); *Rogers v. Commissioner of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). As for the first prong of objective evidence supporting Jackson's pain, Dr. Jimerson relied on an EMG study, which Dr. Goren rejected, but the ALJ did not discredit this study. As for the second prong whether the impairments could reasonably be expected to produce the alleged symptoms, the ALJ is required to analyze this question using the pain analysis procedure to assess credibility. See SSR 96-7p, at *2.

1:06 CV 2971                                                    9

The other information to be considered in conjunction with the medical evidence for investigation of subjective elements of complaints of pain had been set forth in the aforementioned regulations governing review of alleged pain. This other information consists of:

1. The claimant's daily activities;

2. The location, duration, frequency, and intensity of pain;

3. Precipitating and aggravating factors;

4. The type, dosage, effectiveness, and side-effects of medication to alleviate pain or other symptoms;

5. Treatment, other than medication claimant has received for relief of pain; and

6. Any other measures used to relieve pain (e.g. lying down or changing position).

7. Other factors concerning functional limitations and restrictions due to pain or other symptoms.

See 20 C.F.R. §404.1529(c)(3)(I-vii); §416.929(c)(3)(I-vii).

The first factor refers to Jackson's daily activities. It is well established even before the foregoing regulation that the Commissioner certainly can consider daily activities and their inconsistency with alleged pain. See *Gist v. Secretary of Health & Human Services*, 736 F.2d 352, 358 (6th Cir. 1984); *Oliver v. Secretary of Health & Human Services*, 804 F.2d 964, 966 (6th Cir. 1986); *Blacha v. Secretary of Health & Human Services*, 927 F.2d 228, 231 (6th Cir. 1990).

The ALJ began by stating that Jackson's daily activities were beyond what she would expected to perform given her complaints of disability back pain and spasm (TR. 23). The ALJ,

1:06 CV 2971                                                                10

however, exaggerates Jackson's capabilities stating she could cook, launder, bathe and dress herself with very little assistance. (TR. 23)  The undersigned's review of the record discloses that Jackson testified that he can drive short distances and sit or stand for 15 minute intervals (TR. 156-57, 163). She stated that even lifting a gallon of milk causes pain (TR. 163), but her pain is most severe in her lower back radiating down her right leg to her foot (TR. 162).  She also complaints of muscle spasms in her lower back four times daily (TR. 163).  Walking is performed with a cane prescribed by Dr. Jimerson (TR. 165).  Jackson testified that she can perform limited household tasks such as mixing corn bread, putting clothes in the washer and folding laundry while seated (TR. 165).  Her husband helps her in and out of the tub but she can dress herself except for her shoes (TR. 165-66). It is baffling how these limited household tasks and daily activities establish that Jackson can lift more than five pounds or that she is capable of sitting, standing or walking to a degree greater than believed by Dr. Jimerson.

The next consideration is the location, frequency and intensity of pain.  The ALJ made no explicit discussion of this issue.   The third consideration is precipitating and aggravating factors. Again there was no discussion of this issue.  The fourth consideration is the type, dosage, effectiveness and side effects of medication to alleviate pain or other treatments.  Again there was no discussion of this issue. What is notable from the record is the indication that Jackson self-medicated herself with Ibuprofen to the extent to cause stomach ulceration.(TR. 95, 99-101).  The fifth consideration is treatment other than medication that has been received for relief of pain.  The ALJ stated that Jackson has not had back surgery nor has such treatment been recommended (TR. 23).  Dr. Rohl had recommended surgery and this was discussed both in his report and that of Dr.

1:06 CV 2971                                                            11

Jimerson (See TR. 87, 94).  Further, the ALJ claimed that there is no evidence of physical therapy but Dr. Rohl did report in June 2004 that the prescribed physical therapy had given Jackson "some mild relief" (TR. 91), and incidently the physical therapist's notes appear on page 90 or the transcript.  And finally there was no consideration of any other measures used to relieve pain. Consequently it appears that essentially the ALJ's findings, in contravention of SSR 96-7p, rest on the conclusion that Jackson's allegations of disabling pain are contradicted by the objective medical evidence, but the ALJ had not even resolved what was acceptable medical evidence with respect to the EMG study.

What the court is left to review are several reports detailing medical studies providing objective evidence of some degree of pain. Opinions based on this record from non-examining treating physicians are that Jackson should be capable of performing medium exertion (TR. 112-119), Dr. Goren's opinion is that objectively Jackson should be limited essentially to light work with no restrictions on standing, walking, sitting, hand or foot controls but postural restrictions against use of ladders, ropes, scaffolds and only allowing for occasional ramp and stair use and stooping, kneeling, crouching, crawling (TR. 169).  And finally the opinion of Dr. Jimerson that Jackson suffers disabling pain related to her lower back and radiculopathy.

Under the circumstances, the ALJ did not follow the proper analytical requirements regarding the rejection of Dr. Jimerson's opinion which accepted Jackson's claims of disabling pain and accordingly the decision lacks substantial evidence to reach the conclusion that Dr. Goren's opinion based on the functional limitations are supported by the medical record.

1:06 CV 2971                                                                12

In this circuit, the Commissioner's decision may be reversed and benefits awarded only when the Commissioner's decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking. *Newkirk v. Shalala*, 25 F.3d 316 (6th Cir. 1994); *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994); *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985); and see *Lashley v. Secretary*, 708 F.2d 1049 (6th Cir. 1983). It is clear that the ALJ's decision was clearly erroneous because the ALJ's decision lacked substantial evidence on which to reject the opinion of disability from the treating physician. Accordingly, the denial of disability insurance benefits must be reversed and remanded for the award and calculation of disability benefits under Title II of the Social Security Act.

### *CONCLUSION*

Accordingly, review of the record and arguments presented in the statement of errors yields the conclusion the Commissioner's decision denying disability insurance benefits was not supported by substantial evidence and the decision must be reversed and remanded for the award and calculation of benefits.

                                                          s/James S. Gallas
                                                 United States Magistrate Judge

Dated: March 27, 2008